CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for Ch'ville
JUN 0 4 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EVERGREENE NURSING CARE CENTER, *Plaintiff*, v. MICHAEL O. LEAVITT, SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Defendant* | CIVIL NO. 3:07cv00024 MEMORANDUM OPINION and ORDER JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff's Motion for Preliminary Injunctive Relief, filed on May 22, 2007 (docket entry no. 8). For the following reasons, this motion will be GRANTED.

### I. BACKGROUND

Evergreene Nursing Care Center ("Plaintiff") is a skilled nursing facility located in Stanardsville, Virginia, a town with a population of 511. Skilled nursing facilities like Plaintiff are required to undergo periodic inspections or surveys to ensure the facilities are complying with the regulatory provisions of the Medicare and Medicaid programs. Such surveys can be conducted by state agencies, which make findings and recommendations to the Secretary of Health and Human Services, the defendant here ("Defendant" or "Secretary").

If a skilled nursing facility is not in compliance with the regulatory provisions, the state agency will assign scope and severity ratings to each alleged deficiency. There are four severity levels: (1) no actual harm with a potential for minimal harm; (2) no actual harm with a potential for more than minimal harm, but not immediate jeopardy; (3) actual harm that is not immediate

jeopardy; and (4) immediate jeopardy to resident health or safety. *See* 42 C.F.R. § 488.404(b)(1)(i)–(v). A skilled nursing facility with an alleged deficiency in the first severity level (no actual harm with potential for minimal harm) is deemed to be in substantial compliance with the regulations. Allegations of deficiencies falling under the other three severity levels results in a facility being found to be in substantial noncompliance with the regulations. Additionally, each severity level has three possible scope levels. For each severity level, the scope can be characterized as either isolated, pattern, or widespread. *See* 42 C.F.R. § 488.404(b)(2). Finally, each severity-scope rating is assigned a deficiency rating from A to L. The following chart summarizes the severity-scope ratings:

| ***Description***: | ***Scope***: | ***Scope***: | ***Scope***: | ***Compliance***: |
|---|---|---|---|---|
| | isolated | pattern | widespread | |
| no actual harm with a potential for minimal harm | **A** | **B** | **C** | substantial compliance |
| no actual harm with a potential for more than minimal harm, but not immediate jeopardy | **D** | **E** | **F** | substantial noncompliance |
| actual harm that is not immediate jeopardy | **G** | **H** | **I** | substantial noncompliance |
| immediate jeopardy to resident health or safety | **J** | **K** | **L** | substantial noncompliance |

Here, the Virginia Department of Health ("VDH") was the state agency responsible for surveying Plaintiff. Following a May 26, 2007, survey, VDH alleged that Plaintiff was not complying with five regulatory requirements. VDH assigned a scope and severity level of "D" to all five alleged deficiencies. On the basis of VDH's findings, the Centers for Medicare and Medicaid Services ("CMS")—which is the agency through which the Secretary administers Medicare—determined that Plaintiff was not complying with federal regulations and terminated Plaintiff from the program effective June 27, 2005.

Not surprisingly, Plaintiff objected to the VDH recommendation and the subsequent termination by CMS; Plaintiff therefore requested a hearing before an administrative law judge

("ALJ"). The ALJ decided on August 18, 2005, that Plaintiff was in substantial compliance with all federal regulations. Therefore, the ALJ decided, CMS was not authorized to terminate Plaintiff's participation in the program.

Again unsurprisingly, CMS disagreed with the ALJ's decision and filed a request that the Department of Health and Human Services Departmental Appeals Board Appellate Division ("DAB") review the ALJ's decision. On March 9, 2007, the DAB upheld the ALJ's determination on three of the five alleged deficiencies, but reversed the ALJ's decision with respect to two of the deficiencies. Accordingly, the DAB reversed the ALJ's ultimate conclusion that CMS was not authorized to terminate Plaintiff's Medicare participation. This decision became the final decision of the Secretary and, as a result, the Secretary began recouping Medicare payments made to Plaintiff for services rendered to Plaintiff's residents. The Secretary has also told stated that it will no longer make payments for future services Plaintiff provides to Medicare-covered residents until Plaintiff becomes recertified. Finally, the Commonwealth of Virginia has told Plaintiff that it will seek repayment of Medicaid payments previously made to Medicaid-covered residents.

On May 7, 2007, Plaintiff filed this action, seeking injunctive and declaratory relief. More specifically, Plaintiff has filed a motion for preliminary injunction in which it requests that I enjoin Defendant from (1) terminating Plaintiff's Medicare provider agreement retroactive to June 27, 2005; (2) discontinuing current Medicare and Medicaid payments; and (3) seeking recoupment of past Medicare and Medicaid payments made to Plaintiff after June 27, 2005.

## II. APPLICABLE LAW

Courts in the Fourth Circuit use the hardship-balancing test as set forth in *Blackwelder Furniture Co. of Statesville. v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir.1977), to

determine whether to grant injunctive relief. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002); *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811–12 (4th Cir. 1991). Notably, the test applied on a plaintiff's application to stay an agency action pending judicial review is the same as that applied to a request for preliminary injunction. *Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 280 (E.D. Ark. 1983).

> The *Blackwelder* test requires a court to consider the following four factors:
>
> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
> (2) the likelihood of harm to the defendant if the requested relief is granted,
> (3) the likelihood that the plaintiff will succeed on the merits, and
> (4) the public interest.

*Direx*, 952 F.2d 812; *White-Battle v. Democratic Party of Va.*, 323 F. Supp. 2d 696, 700–01 (E.D. Va. 2004). Under this test, the plaintiff must establish grounds supporting each of these factors; the first two factors are the most important. *Id.*; *see also Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Faulkner v. Jones*, 10 F.3d 226, 233–34 (4th Cir. 1993); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In the Fourth Circuit, the first factor controls the initial inquiry: "the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied." *Scotts*, 315 F.3d at 271; *see also Direx*, 952 F.2d at 812 ("We naturally begin our analysis with that issue because [t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." (alteration in original) (quotation marks omitted)). This "irreparable harm" must be both actual and imminent and can be neither remote nor speculative. *Direx*, 952 F.2d at 812.

If the plaintiff has made a showing that she will suffer irreparable harm if the injunction is denied, "the court must then balance the likelihood of harm to the plaintiff [if the injunction does not issue] against the likelihood of harm to the defendant [if it does]." *Scotts*, 315 F.3d at 271. "If the balance of the hardships 'tips decidedly in favor of the plaintiff,' then typically it will 'be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.'" *Id.* (citations omitted). "But if the balance of hardships is substantially equal as between the plaintiff and defendant, then 'the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.'" *Id.*

Also, the general rule is that if a party requesting injunctive relief has an adequate remedy at law, that party will not suffer "irreparable harm" if the injunction does not issue. *E.g. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).

### III. FINDINGS OF FACT

1. Plaintiff has claims pending under Medicare for March, April, and May 2007 that total more than $200,000.
2. Continued deprivation of this amount of money would result in Plaintiff closing its facility.
3. If Plaintiff is required to close its facility, seventy-three residents will need to be relocated to another facility.
4. In a twenty-mile radius from Plaintiff's facility, there are only twenty available beds that could be used for the relocated residents.
5. If the seventy-three residents are forced to be relocated, many of the residents

- 5 -

could suffer transfer trauma, which involves adverse physical or psychological effects on the residents.

6. If Plaintiff is required to close its facility, 119 residents will be either laid off or terminated.

7. Medicare program payments for Plaintiff's Medicare-eligible residents are disbursed by Defendant.

8. Medicaid program payments for Plaintiff's Medicaid-eligible residents are disbursed by the Commonwealth of Virginia and not by Defendant.

9. However, Medicaid must terminate Plaintiff's participation in the Medicaid program if Medicare terminates Plaintiff's participation in the Medicare program

10. Defendant agrees to postpone collecting previously paid Medicare disbursements pending resolution of this action if Plaintiff either posts bond or enters an approved repayment schedule.

## IV. CONCLUSIONS OF LAW

1. Plaintiff will suffer irreparable, immediate harm if I deny its motion for preliminary injunction:

    a. Plaintiff will not receive more than $200,000 in pending Medicare claims;

    b. Plaintiff will be required to close its facility;

    c. Plaintiff will be required to relocate its seventy-three residents, with the risk that the residents may suffer from transfer trauma;

    d. Plaintiff will be required to lay off or terminate the employment of its 119 employees.

2. Defendant will suffer little to no harm if I grant Plaintiff's motion for preliminary injunction:

    a. Assuming Defendant prevails at trial, it will only have suffered a delay in its recoupment efforts;

    b. Defendant would still be required to issue payments on behalf of patients transferred to a different facility;

    c. The alleged deficiencies are all isolated and present no actual harm nor the threat of immediate harm to Plaintiff's patients during the duration of these proceedings.[1]

3. The balance of harms tips decidedly in favor of Plaintiff.

4. Plaintiff has raised questions regarding the merits of its case that are fair ground for litigation.

5. Because Plaintiff's alleged deficiencies do not present any threat of immediate harm to its patients, the public interest lies in allowing the patients to remain at Plaintiff's facility (preventing them from the possibility of suffering transfer trauma) and in allowing the 119 employees to remain employed pending resolution of this matter.

## V. CONCLUSION

Until this case is decided on its merits, Defendant is hereby enjoined from:

1. terminating Plaintiff's Medicare provider agreement retroactive to June 27, 2005;

2. discontinuing current Medicare payments;

---

[1] Defendant has submitted paperwork showing that a survey performed on March 1, 2007 resulted in nine alleged Level D deficiencies, one Level E deficiency, two Level F deficiencies, and one Level G deficiency. The most serious of these—the Level G deficiency—represents actual harm that is not immediate jeopardy and affected

- 7 -

3. seeking recoupment of past Medicare payments made to Plaintiff after June 27, 2005.

Additionally, Plaintiff must post a bond in the amount of $1,000 as security for the payment of costs and damages that may be incurred by Defendant should it be found that Defendant was wrongfully enjoined or restrained.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

ENTERED: _____
United States District Judge

June 4, 2007
Date

---

only one of the facility's residents.